**Larry LeDENT, Petitioner,**

v.

**Charles L. WOLFF, Jr., Warden, Nebraska Penal Complex, Respondent.**

**No. CV71–L–149.**

United States District Court,
D. Nebraska.

Oct. 28, 1971.

---

Paul E. Watts, Omaha, Neb., for petitioner.

Calvin E. Robinson, Asst. Atty. Gen., for respondent.

## MEMORANDUM OF DECISION

URBOM, District Judge.

The petitioner, Larry LeDent, is currently incarcerated in the Nebraska Penal and Correctional Complex. He is serving a 4 to 5-year sentence imposed by the District Court of Douglas County, Nebraska, after a jury found him guilty of possession of marijuana. LeDent now seeks relief through a petition for writ of habeas corpus. Oral arguments on the respondent's motion for a summary judgment were combined with arguments on the merits of the petitioner's claim. Counsel for both parties have stipulated to the accuracy and completeness of the state court records and have agreed that they may be considered by the court for all purposes.

Larry LeDent was first arrested on a charge of possession of depressant or stimulant drugs in late August or early September of 1968. After a discussion with a police officer on the vice control detail and assistant county attorney Eugene Leahy, it was agreed that the charge against LeDent would not be prosecuted, if LeDent would agree to act as an informer to the Omaha police. It was agreed that LeDent would operate in a normal fashion and give periodic reports of narcotics activities in the Omaha area to the police. On several occasions LeDent, using his father as an intermediary, did give information to Joe Friend of the vice control detail of the Omaha police.

In the latter part of October, 1968, LeDent offered to sell a quantity of marijuana to Louis Schiern. Schiern was convinced that LeDent was working for the police. Schiern in fact was arrested on November 2, 1968, on a narcotics charge, although it is not clear whether the arrest was made on the basis of information supplied by LeDent. On November 4, 1968, Schiern reached officer Carl Grossoehme of the Nebraska State Patrol Drug Control Division and informed him that LeDent had fifty lids of marijuana and a homemade brick of grass stored in LeDent's parents' home. Schiern gave the information to Grossoehme in retaliation for LeDent's assumed connection with the Omaha police. On the basis of this information officer Grossoehme prepared an affidavit and an application for a search warrant. The warrant was issued by a state district judge, and officer Grossoehme in the company of officer Quist of the Omaha Police Department went to the LeDent home, where the officers found 47 lids of marijuana stored in a crawl-away beneath the basement stairs. The information given by Schiern proved to be quite accurate, as the two

officers were able to go directly to the place where the marijuana was stored.

Over objection of the defendant's counsel the marijuana was introduced into evidence at the criminal trial. LeDent was found guilty by the jury and the conviction and sentence were affirmed by the Supreme Court of Nebraska. State v. LeDent, 185 Neb. 380, 176 N.W.2d 21 (1970), cert. denied, 400 U.S. 917, 91 S.Ct. 177, 27 L.Ed.2d 157 (1970).

At the oral argument on the petition for writ of habeas corpus in this court counsel for the petitioner presented three issues:

(1) whether LeDent was entrapped by the state into committing a crime;

(2) whether the state was estopped from prosecuting LeDent for the crime of possession of marijuana; and

(3) whether the affidavit and application for search warrant were sufficient.

These issues were raised in the direct appeal to the Supreme Court of Nebraska and decided adversely to LeDent.

## ENTRAPMENT AND ESTOPPEL

The petitioner's defense at his criminal trial was based partially on entrapment. The issue was raised during argument on the petition for a writ of habeas corpus with counsel for the respondent agreeing that a federal issue was presented. An examination of the cases reveals that in only one instance, Banks v. United States, 249 F.2d 672 (C.A. 9th Cir. 1958), has entrapment been held to raise a constitutional issue. In that case it was held that issues of entrapment should have been considered by the district court in a 28 U.S.C. § 2255 proceeding, and the case was remanded. When the case was next before the Ninth Circuit, the court of appeals substantially withdrew from the position in Banks I and in considering the appellant's contention that he was denied due process because of the insufficiency of the trial court's instruction on entrap-

ment the court said: "None of the first three contentions above noted involves a violation of the constitutional rights of appellant." Banks v. United States, 258 F.2d 318, 319 (C.A. 9th Cir. 1958). The Ninth Circuit strongly reaffirmed the position taken in Banks II in the case of Black v. United States, 269 F.2d 38 (C. A. 9th Cir. 1959). This appears to be the usual view, including that of this circuit. See Evans v. United States, 408 F.2d 369 (C.A. 7th Cir. 1969); United States v. Bailey, 331 F.2d 218 (C.A. 7th Cir. 1964); Simmons v. United States, 302 F.2d 71 (C.A. 3rd Cir. 1961); Way v. United States, 276 F.2d 912 (C.A. 10th Cir. 1960); Turner v. United States, 262 F.2d 643 (C.A. 8th Cir. 1959); and Davis v. United States, 205 F.2d 516 (C.A. 5th Cir. 1953). The standard does not differ in a habeas corpus proceeding attacking a state conviction. In United States ex rel. Hall v. Illinois, 329 F.2d 354 (C.A. 7th Cir. 1964), the court expressly declined to grant habeas relief on the petitioner's contention that failure to instruct on entrapment raised a due process question. Hall was relied on in Benson v. Carter, 396 F.2d 319 (C.A. 9th Cir. 1968), to reach the same result, thus completing the withdrawal of the Ninth Circuit from the rationale advanced in Banks I. I therefore conclude that the entrapment and estoppel issues are matters of substantive state law and do not raise constitutional issues under the due process clause of the Fourteenth Amendment.

## THE STATUTORY EXEMPTION

Section 28–462, R.R.S. Neb.1943, a portion of the marijuana law in effect at the time of LeDent's trial, provides that:

" * * * the provisions of this act restricting the possession * * * of narcotic drugs shall not apply to * * * persons whose possession is for the purpose of aiding public officers in performing their official duties."

The testimony at the criminal trial was conflicting as to whether LeDent's

arrangement with Leahy authorized him to sell marijuana. It could have been found either that LeDent was authorized to operate exactly as he had before his first arrest or that he was expressly forbidden to deal in narcotics for his own profit. As the Supreme Court of Nebraska noted in its opinion affirming LeDent's conviction, the trier of fact reasonably could have found either way. State v. LeDent, 185 Neb. at 383, 176 N.W.2d 21.

■■ This court has previously held that when a statute confers a benefit, the benefit must be made available to all equally. To grant the benefit to one class, while withholding it from another, is an invidious discrimination intolerable under the equal protection clause of the Fourteenth Amendment. Sawyer v. Sigler, 320 F.Supp. 690 (U.S.D.C. Neb. 1970). This is not LeDent's situation, as he does not fit within any identifiable class which is being made the object of discriminatory treatment. I therefore hold that as to issues numbered (1) and (2), there is no federal question presented and this court is without jurisdiction to consider the issues on collateral review. Summary judgment will be granted for the respondent as to those issues.

## THE AFFIDAVIT AND WARRANT

■ Prior to the trial in the District Court of Douglas County, LeDent's counsel filed a motion to suppress the evidence found when executing the search warrant. The motion was heard immediately before the trial. During the hearing counsel for the petitioner sought to have the evidence suppressed on the basis of the insufficiency of the affidavit in support of the warrant. Although the petitioner's counsel took the position that the burden of proof was on the state to prove the adequacy of the

affidavit, the trial judge placed the burden on the defendant (LeDent). No evidence was adduced at the hearing and the motion to suppress was denied. Counsel for LeDent objected to the introduction of the seized marijuana at every appropriate stage of the trial and presented further argument on the sufficiency of the affidavit at the hearing on his motion for a new trial. Because of the complexity of the Fourth Amendment questions presented, it is necessary to examine the affidavit and warrant in considerable detail.

The body of the affidavit upon which the warrant was issued is as follows:

"That the following are the grounds for issuance of a search warrant for said property and the reasons for his belief, to-wit:[1] That the said Larry LeDent is a resident at the above address and is the son of the registered title holder; and that a reliable informant related to the investigative authorities that the said Larry LeDent has offered to the said reliable informant certain narcotic drugs for resale; that on Friday, November 1, 1968, the said Larry LeDent told the said reliable informant that he had fifty (50) lids of marijuana available and also a homemade brick of grass available for resale; and that he knows that reliable informant knows that the narcotics are kept at the residence at 13450 Frederick Street, Omaha, Douglas County, Nebraska.[2] The reliable informant has given your Affiant other information that coincides with information received from other reliable sources. Said reliable informant's information has been verified and that information received has been the truth. The said Larry LeDent is now charged under an information charging him with possession of depressant or stimulant drugs in a separate incident."

1. The portion of the affidavit preceding this footnote is a part of the printed form.

2. The portion of the affidavit preceding this point and following the printed portion is typewritten. The quoted words after this point are typewritten, but patently were made by a typewriter different from the one making the portion preceding this point.

The warrant issued on the strength of this affidavit has a printed portion which begins, "WHEREAS I am satisfied that there is probable cause to believe that the following grounds exist for issuance of a search warrant, to-wit: * * *." There follows a series of blank lines upon which is typed a rephrasing of the grounds for probable cause stated in the affidavit, reciting in similar terms the language of the affidavit, with the exception of the last three sentences of the affidavit. Nothing in the warrant refers to the final three sentences.

■ From the affidavit it is apparent that it was based primarily upon hearsay. Thus, the two-part test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 150, 12 L.Ed.2d 723 (1964), must be applied against the contents of the affidavit to determine its sufficiency. The petitioner also relies upon Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), but *Spinelli* was decided on January 27, 1969, whereas the affidavit here at issue was executed on November 4, 1968. In view of what was said in United States v. Hanon, 428 F.2d 101 (C.A. 8th Cir. 1970), it is likely that *Spinelli* is not to be applied retroactively insofar as it may be considered to have established standards different from those in *Aguilar*. To constitute a basis for probable cause a hearsay affidavit, according to *Aguilar*, must contain sufficient facts to indicate (1) that the information given by the informant is reliable and (2) that the informant is reliable. Mere conclusory statements of the affiant that the information is reliable and the informant is credible will not do. Thus, a statement in the affidavit in *Aguilar* that "Affiants have received reliable information from a credible person and do believe that" the defendant possessed narcotics was insufficient. The court in *Aguilar* said:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, [80 S.Ct. 725, 4 L.Ed.2d 697,] the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, [84 S.Ct. 825, 11 L.Ed.2d 887,] was 'credible' or his information 'reliable.' Otherwise, 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' * * * or, as in this case, by an unidentified informant."

That some of the circumstances showing reliability of the information and the informant were presented in the affidavit in the present case cannot be disputed. The question is whether enough of the circumstances were related.

Reliability of the information given by an informant may be met in several ways. For example, the information relayed may be of such detail that its confirmation by observation would supply probable cause. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). The information may be confirmed by independent police observation, and such confirmation stated in the affidavit. United States v. Viggiano, 433 F.2d 716 (C.A. 2nd Cir. 1970); United States v. Jensen, 432 F.2d 861 (C.A. 6th Cir. 1970). Or, the circumstances under which the information was revealed may provide the basis for the credibility of the information, such as where the revealing tends to incriminate the informant. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

■ The affidavit here in question states that the informant had been offered marijuana by LeDent. It also states that LeDent lives at 13450 Frederick and is the son of the registered ti-

tle holder. Then the affidavit states, "that he [the affiant] knows that reliable informant knows that the narcotics are kept at the residence at 13450 Frederick Street * * *," without setting forth details of the affiant's ability to confirm the informant's knowledge. This statement carries the assertions of the affidavit beyond mere belief of the affiant and the issuing magistrate reasonably could accept the affiant's declaration. Probable cause "is concerned with probabilities, 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Berry, 423 F.2d 142, 144 (C.A. 10th Cir. 1970), citing Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948). Under these circumstances it was reasonable to assume that if LeDent had marijuana, it was stored on the premises occupied by him, and it was reasonable to assume that LeDent had marijuana.

■ Recognizing the value of informants, particularly in narcotics investigations, courts have approved affidavits based on what informants say, but affidavits should not be approved if they could have been the result, as well as not, of mere suspicion or rumor. A need for continued use of an informant may justify not disclosing his identity in the affidavit, but some showing of reliability of the informant safeguards against pure speculation, which is the heart of an unreasonable search and seizure prohibited by the Constitution. In the case of a hired informant who is used regularly by the police, reliability may be made by a statement that the informant in the past has supplied other information which has proved truthful. Gonzales v. Beto, 425 F.2d 963 (C.A. 4th Cir. 1970), cert. denied, 400 U.S. 928, 91 S.Ct. 194, 27 L.Ed.2d 189 (1970); United States v. Dunnings, 425 F.2d 836 (C.A.2d Cir. 1970), cert. denied, 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412 (1970); United States v. Ross, 424 F.2d 1016 (C.A. 4th Cir. 1970), cert. denied, 400 U.S. 819, 91 S.Ct. 35, 27 L.Ed.2d 46

(1970). A "walk-in" informant is one who has no previous connection with the police but in one instance relays information. Without a showing of his reliability, a search and seizure could occur by the police without any factual basis and in furtherance of nothing more than a personal vendetta of the informant. Were a warrant to issue under those circumstances, the spirit of the Fourth Amendment would be violated.

With respect to the reliability of the informant, the affidavit in the present case contains the following:

"The reliable informant has given your Affiant other information that coincides with information received from other reliable sources. Said reliable informant's information has been verified and that information received has been the truth. The said Larry LeDent is now charged under an information charging him with possession of depressant or stimulant drugs in a separate incident."

■ It is probably correct that a history of LeDent's being charged with possession of drugs in a separate incident is not sufficient, standing alone, to show probable cause. See United States v. Cobb, 432 F.2d 716 (C.A. 4th Cir. 1970); United States v. Melvin, 419 F.2d 136, 141 (C.A. 4th Cir. 1960). But that is not to say that such charge is of no weight whatsoever when viewed with other factual allegations. The validity of the warrant thus turns on whether the statements that the informant had given "other information that coincides with information received from other reliable sources" and that the "reliable informant's information has been verified" are sufficient, in light of LeDent's being charged in a separate incident, to show the reliability of the informant. The declaration that the informant had supplied "other" information and that such information had been independently verified provides a basis for the magistrate's concluding independently that the informant was a reliable person. To hold to the contrary would be to impose

hypertechnical requirements onto the finding of probable cause. This would be contrary to the policy of favoring warrants and doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. Jones v. United States, 362 U.S. 257, 270, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

However, the inquiry does not end there. The petitioner argues that the evidence at the trial showed that the affidavit was untrue in material respects and that he was foreclosed from taking advantage of that evidence. The difficulty with his position is twofold: (1) the evidence at the trial did not show that the affidavit was untrue, and (2) the petitioner did not try during the hearing on the motion to suppress, or during the course of his criminal trial, or at the hearing on the motion for a new trial, or in the hearing before this court, to show that the affidavit was not true.

It is true that at the trial Schiern and Grossoehme testified that Grossoehme and Schiern had not known each other until November 4, 1968, when the information was given by Schiern to Grossoehme about LeDent's activities. But the affidavit does not assert anything to the contrary. The giving of the "other" information is not claimed by the affidavit to have been given on any prior date, and the verification claimed by the affidavit reasonably could have occurred on November 4 after the information was given by Schiern to Grossoehme. Schiern gave his information on November 4, but nothing in the evidence reveals the hour, except that it was in the morning. This means that it could have been as early as 12:01 a. m. or as late as 11:59 a. m., giving Grossoehme between four and sixteen hours to interview Schiern, verify Schiern's information, draw the affidavit, obtain the issuance of the search warrant, and arrive at the LeDent home by about 4:00 p. m., as the evidence shows he did. This is not inherently impossible or improbable.

Nothing else in the testimony before this court raises any suggestion that the affidavit was anything but truthful.

 I need not reach the question of whether or to what extent a defendant in a criminal case may attack, as being untruthful, an affidavit upon which a warrant is issued. For the purposes of this case I am assuming that the untruthfulness of such an affidavit properly could be shown and that such a showing would invalidate the warrant. The burden of attacking the validity of a warrant for untruthfulness of the affidavit must be upon the one attacking it, where such warrant has been issued, as it was here, after a reasonable determination by an independent authority, a state district judge or other magistrate on the basis of probable cause. United States v. Thompson, 421 F.2d 373 (C.A. 5th Cir. 1970); DerGarabedian v. United States, 372 F.2d 697 (C.A. 5th Cir. 1966). Such a determination gives validity to the warrant in the absence of a showing by the one attacking it that it is invalid. The petitioner simply has not carried that burden. Neither has he shown that he was foreclosed during the entire state criminal proceeding to make that showing. The trial judge at the hearing on the motion to suppress placed the burden of proof on the defendant and the defendant presented no evidence. At that point he did not know that Schiern was the informant, but there is no indication that he could not have called Grossoehme to testify and at that time make full inquiry of Grossoehme as to what the "other" information was and what verification Grossoehme had made of such other information to cause him to conclude that the informant was reliable. It cannot be said that the defendant, LeDent, was prevented during the course of the trial from making full inquiry of Schiern, who was the prosecution's first witness and from whose testimony it was clear that Schiern was the informant. Nor can it be said that the defendant was prevented at the trial from questioning in full Grossoehme

who was the prosecution's second witness and who specifically identified Schiern as the informant. The fact is that no questions were put to Schiern or Grossoehme regarding the giving by Schiern of "other" information or the verification of that information by Grossoehme. If the questions had been put and if the court had intercepted them, the issue now would be different. Similarly, at the motion for a new trial no evidence was offered to show the untruthfulness of the affidavit. Whether the trial court would have permitted the introduction of the evidence is unknown and the answer cannot be supplied by speculation. The statement by the trial court at the motion for a new trial that evidence should have been presented at the motion to suppress in no way determines what the trial court's attitude would have been in the face of an actual proffer at the hearing on the motion for a new trial. No evidence has been offered in this court, even, touching the circumstances of the issuance of the search warrant, other than that presented during the course of the criminal trial itself. Under those circumstances I cannot find that the petitioner has shown that the affidavit was untrue or that he was prevented from presenting evidence of its untruthfulness.

The affidavit and the warrant themselves raise suspicions, but suspicions are not evidence of untruthfulness. In the affidavit the last three sentences, which are the source of evidence of reliability of the informer, were obviously typed with a typewriter different from the one which was used in typing the rest of the affidavit. Furthermore, the same three sentences do not appear on the warrant. All this permits one to wonder whether these three crucial sentences were added to the affidavit after it had been presented to the state district judge and after the warrant had been issued. Nevertheless, the plain fact is that there is no evidence that this was done. Ventilation of these suspicious circumstances was not attempted at any stage of the proceedings. Leaving them as mere suspicions does not cause them to blossom into facts.

The motion of the respondent for summary judgment will be granted on all issues.